Bonnie L. GIBSON, Plaintiff,

v.

**William J. HENDERSON, Postmaster General, and United States Postal Service, Defendants.**

**No. 1:99CV01052.**

United States District Court, M.D. North Carolina.

Jan. 12, 2001.

Nancy Pulliam Quinn, The Quinn Law Firm, Greensboro, NC, for Plaintiff.

Gill P. Beck, Office of U.S. Attorney, Greensboro, NC, Jeannette L. Bisson, United States Postal Servive, Washington, DC, for Defendants.

## MEMORANDUM OPINION

BEATY, District Judge.

This matter comes before the Court pursuant to Defendants' Motion for Summary Judgment [Document # 16]. Plaintiff Bonnie L. Gibson ("Plaintiff" or "Gibson") filed suit in this case against Defendants William J. Henderson ("Henderson") and the United States Postal Service ("USPS"), alleging disability discrimination in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 700, age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, and negligent or intentional infliction of emotional distress.

For the reasons that follow, Defendants' Motion for Summary Judgment as to Plaintiff's claims is GRANTED.

## I. FACTUAL BACKGROUND

Plaintiff Bonnie Gibson began working for the USPS on June 1, 1970 as a Distribution Clerk at the Los Angeles, California Mail Processing Facility. After Plaintiff had worked with the Los Angeles facility for over twenty years, the facility closed permanently due to an agency reorganization. After the shut-down, Plaintiff was eventually transferred to the Greensboro Purchasing and Materials Service Center ("PMSC") of the USPS to serve as the principal secretarial, clerical, and administrative support to Raymond Thompson ("Thompson"), the PMSC Manager who hired Plaintiff. Because Thompson had previously served as the Director of PMSC, Western Region, he had known of Plaintiff when she worked at the Los Angeles facility, and was aware that during Plaintiff's employment there, Plaintiff had

suffered from medically-related problems, had undergone extensive surgery,[1] and had exhausted all of her sick leave. [Gov.Ex. A, Thompson Aff. B ¶ A2b–A2c]. Given Thompson's knowledge of Plaintiff's medical history and her past attendance record at the Los Angeles facility, Thompson asked Plaintiff prior to hiring her at the Greensboro facility whether her attendance would pose future problems. After assuring Thompson that attendance would not be a problem, Plaintiff began work at the Greensboro PMSC as a non-exempt secretary. [Gov.Ex. A, Thompson Aff. B ¶ A2b, A4C]. Plaintiff's primary responsibilities included preparing correspondence in support of the Office Manager, making travel arrangements, providing telephone coverage, and preparing travel vouchers. [Gov.Ex. A, Thompson Aff. B ¶ A5A].

As a non-exempt employee, Plaintiff was paid on an hourly basis and was not permitted to take personal leave or to work past her normal hours without supervision. [Gov.Ex. C, Tr. of Admin. Hr'g, pp. 124, 175–76]. Moreover, because Plaintiff was the only secretary on duty, her start time was fixed and she was required to work primarily during core hours, which were from 8:00 a.m. to 5:00 p.m.[2] [Gov.Ex. A, Thompson Aff. B ¶ A5b]. Despite the inflexibility in Plaintiff's work schedule, in certain unplanned, emergency situations, Eleanor Robinson, Plaintiff's Group Leader, allowed her non-exempt employees, such as Plaintiff, to revise their work schedules, meaning they could come in

earlier and leave earlier or come in later and leave later, to accommodate unexpected needs. In fact, Plaintiff was given some revised schedules in 1993, and there were five instances in 1994 where Plaintiff was permitted to revise her schedule to avoid taking leave. [Gov.Ex. C, Tr. of Admin. Hr'g, pp. 69, 208]. However, despite Robinson's perspective on flexible schedules, Thompson, who was Robinson's immediate supervisor, preferred that non-exempt employees, such as Plaintiff, take annual or sick leave or leave without pay, as opposed to a revised schedule, to deal with emergency-related absences. [Gov.Ex. A, Thompson Aff. ¶ A4C]. Thompson had initially given Plaintiff's unit more flexibility with respect to revised schedules;[3] however, because Thompson believed that Plaintiff abused the privilege, revised schedules were essentially abandoned.[4] In fact, before restricting the privilege, Thompson had approved revised schedules for Plaintiff on certain occasions. [Gov.Ex. C, Tr. of Admin. Hr'g, p. 69]. According to Thompson, not only did Robinson and Thompson have problems with Plaintiff's use of the revised schedule, they also had problems with Plaintiff's attendance, despite her assurances on being able to comply with attendance requirements prior to being hired. In fact, on July 19, 1993, within ten days of reporting for duty, Plaintiff had already taken her first medical leave of absence.

While at PMSC, Plaintiff suffered from migraine headaches, degenerative disc dis-

---

1. At the time Plaintiff was hired by Thompson, she had just undergone the fifth of several back surgeries for ruptured disks.

2. Plaintiff's scheduled hours were from 7:30 a.m. to 4:00 p.m. [Gov.Ex. C, Tr. of Admin. Hr'g, p. 122]. All employees were permitted to choose a start time between 7:30 a.m. and 9:00 a.m. and were required to stick with that scheduled time until a permanent change was needed. *See id.* at 122, 123.

3. Thompson had in fact approved revised schedules for Plaintiff on certain occasions. [Gov.Ex. C, Tr. of Admin. Hr'g, p. 69].

4. Robinson explained that revised schedules were in fact permitted for quite some time until Plaintiff abused the privilege. [Gov.Ex. C, Tr. of Admin. Hr'g, pp. 208–10]. Because Robinson felt that Plaintiff abused the privilege, Robinson had to end the privilege for Plaintiff and the rest of the Administrative team. *See id.* According to Robinson, revised schedules were only supposed to be used for emergency purposes, but Plaintiff used them all the time. Once Thompson became aware of the frequency with which Plaintiff used the revised schedules, Thompson advised that he wanted use of the privilege to cease. *See id.* at 251.

ease, abdominal pain, and Barrett's esophagus, which, in addition to other factors unrelated to these conditions, resulted in Plaintiff frequently being absent from work. In fact, Plaintiff incurred eleven additional absences between her first absence on July 19, 1993 and October 19, 1993. [Gov.Ex. A, Thompson Aff. B, Att. 10]. More specifically, Plaintiff used 107.5 hours of leave during this three-month time period. On October 19, 1993, because of her low attendance rate, Plaintiff was placed on restricted sick leave. Despite this restriction, Plaintiff's attendance rate did not improve, and she was required to present medical documentation for all health-related absences. In addition, on December 19, 1994, Plaintiff was asked to submit a Plan for Improvement to address her excessive absenteeism and other areas of deficiency. Despite the steps taken to improve Plaintiff's attendance, Plaintiff's absences continued to escalate and she continued to incur a high percentage of unscheduled absences. [Gov.Ex. A, Thompson Aff. B ¶ A3a].[5]

On May 26, 1995, Plaintiff was issued a warning letter for failure to maintain regular attendance. Plaintiff was also reprimanded for her reliability, promptness, and ability to cooperate with others. [Gov. Ex. A, Thompson Aff. B, Letter of Warning, Att. 4]. Moreover, between the time Plaintiff submitted her Plan for Improvement and the time the letter of warning was issued, Plaintiff used 181.5 hours of leave. *See id.* In the warning letter, Plaintiff was informed that because her department operated on strict time standards, her absences negatively impacted on the department's efficiency. *See id.* Plaintiff was also warned that failure to correct her attendance problems would result in "more severe disciplinary action being taken against" her, including the possibility of removal from the Postal Service. *See id.*

Discussions about Plaintiff's attendance problems began as early as October 1993, when Plaintiff's supervisor put Plaintiff on notice of the problems that her frequent absences were causing. [Gov.Ex. A, Thompson Aff. B, Notice of Proposed Adverse Action–Removal, Att. 7]. On July 19, 1994, Plaintiff was again made aware of the problems that her unscheduled absences were causing for the department. *See id.* In addition, Plaintiff had an informal conference with Thompson in November of 1994 about her absenteeism problem. [Gov.Ex. C, Tr. of Admin. Hr'g, p. 75]. According to Robinson, the frequency of Plaintiff's absences generated concern about whether Plaintiff was capable of performing her job. Therefore, on June 22, 1995, Robinson asked Plaintiff to undergo a fitness-for-duty exam. [Gov.Ex. C, Tr. of Admin. Hr'g, p. 207]. In the exam report, Dr. Guarino, the examining physician, noted that although Plaintiff had a history of a number of serious medical problems for which she had received treatment, most of Plaintiff's problems were "quiescent", meaning they were inactive. [Gov.Ex. A, Thompson Aff. B, Letter to Robinson, Att. 5]. Dr. Guarino then noted that except for the problems that Plaintiff had been experiencing with her migraine headaches, none of Plaintiff's past medical problems should recur in the future. After first explaining that Plaintiff would experience some sickness-related absences in the future, Dr. Guarino concluded that Plaintiff was fit for duty. Despite Guarino's fitness determination, Plaintiff's absenteeism continued to increase. Accordingly, Plaintiff was issued a final warning letter on August 14, 1995. [Gov.Ex. A, Thompson Aff. B, Final Letter of Warning, Att. 6]. This warning letter itemized 85.5 hours of annual leave, sick leave, and leave without pay that Plaintiff had taken since the issuance of the first warning letter. Plaintiff

---

5. Although Plaintiff was absent a total of 125.25 hours in 1993, she was absent a total of 299.75 hours in 1994, and a total of 411.55 hours in 1995. [Gov.Ex. A, Thompson Aff. B, Leave Analysis, Att. 10]. According to Thompson, the frequency of Plaintiff's absences frequently left Robinson unaware of Plaintiff's whereabouts and of whether Plaintiff would be attending work on any given day. [Gov.Ex. A, Thompson Aff. B ¶ A2i].

was warned that "this high rate of absenteeism [was] unacceptable to the Postal Service," and that "further deficiencies [would] result in more severe disciplinary action being taken against [her]." [6] *Id.* Notwithstanding this second warning letter, Plaintiff's rate of absenteeism again did not improve. For the remainder of the 1995 calendar year, Plaintiff had an additional 18 separate absences and used an additional 178.55 hours of leave. [Gov.Ex. A, Thompson Aff. B, Leave Analysis, Att. 10].

According to Thompson, given Plaintiff's failure to improve her absences after the issuance of both warning letters, Thompson felt that Plaintiff was not taking her warnings seriously. On January 19, 1996, based on Plaintiff's failure to maintain regular attendance, the PMSC issued to Plaintiff a Notice of Proposed Adverse Action–Removal. [Gov.Ex. A, Thompson Aff. B, Notice of Proposed Action–Removal, Att. 7]. In this Notice, Plaintiff was informed that since the issuance of the August 14, 1995 warning letter, Plaintiff had been absent an additional 161.63 hours, that she had been "repeatedly cautioned regarding [her] obligation to be regular in attendance," and that her failure to maintain regular attendance violated the minimum standards set forth for all employees in the Employee and Labor Relations Manual.[7] Subsequently, on February 16, 1996, Plaintiff was issued a Letter of Decision–Removal, informing Plaintiff that, effective February 23, 1996, she would be removed from the agency. [Gov.Ex. A, Thompson Aff. B, Letter of Decision–Re-

moval, Att. 8]. In this Letter of Removal, Plaintiff was notified that she had a very high rate of absenteeism, that many of her absences had been unscheduled, that many of her absences were not medically-related, that she had been notified "several times, both through lesser forms of discipline and other non-disciplinary means that [her] attendance record was not acceptable," and that her fitness for duty exam revealed that she was not suffering from "a medical condition of a recurring nature [that] would be expected to cause such a high rate of absenteeism." *Id.* Plaintiff received counseling prior to her removal. It is also noted that Plaintiff was 53–years–old at the time of her termination.

On January 17, 1996, Plaintiff filed a formal complaint with the Equal Employment Opportunities Commission, alleging discrimination based on age and physical disability. On August 31, 1999, despite her allegations, Plaintiff was issued a Final Agency Decision upholding her removal from PMSC. On November 29, 1999, Plaintiff filed this civil action in the United States District Court for the Middle District of North Carolina, alleging age and disability discrimination and negligent or intentional infliction of emotional distress. In support of her discrimination claims, Plaintiff alleges that she should have been allowed to revise her schedule to accommodate her need to take medically-related absences. Plaintiff further contends that Karen Kim and Myra Lynn, other employees with allegedly high absenteeism rates, were not terminated because of their ab-

6. It was also noted that performance issues, such as "grammatical, punctuation, spelling, and typing errors in [Plaintiff's] correspondence" continued to cause problems. [Gov. Ex. A, Thompson Aff. B, Notice of Proposed Action–Removal, Att. 7].

7. Section 373.1 of the Employee and Labor Relations Manual lists reliability and promptness as two minimum standards required of all employees. [Gov.Ex. A, Thompson Aff. B, Notice of Proposed Action–Removal, Att. 7]. Section 511.43 provides that "employees are expected to maintain their assigned schedule

and must make every effort to avoid unscheduled absences." *Id.* Section 666.81 further instructs that "all employees are required to be in regular attendance." *Id.* Section 666.82 then provides that employees failing to report for duty on scheduled days "will be considered absent without official leave except in actual emergencies which prevent obtaining permission in advance." *Id.* Lastly, section 666.86 instructs that "[p]ostal officials will take appropriate disciplinary measures to correct violations of [the Employee and Labor Relations Manual]." *Id.*

senteeism. However, Plaintiff has presented no evidence as to the frequency with which the co-workers about which she complains were absent. Moreover, according to Defendants, the employees about which Plaintiff complains did not accumulate as many absences as Plaintiff. Defendants seek summary judgment as to all of Plaintiff's claims.

## II. *DISCUSSION*

### A. *Standard of Review*

■■■ Summary Judgment is appropriate when "there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Material facts are those "that might affect the outcome of the suit under the governing law...." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202, 211 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

■■■ In making a determination on a summary judgment motion, the Court views the evidence in the light most favorable to the non-moving party, according that party the benefit of all reasonable inferences. *See Bailey v. Blue Cross & Blue Shield of Virginia,* 67 F.3d 53, 56 (4th Cir.1995), *cert. denied,* 516 U.S. 1159, 116 S.Ct. 1043, 134 L.Ed.2d 190 (1996). However, mere allegations and denials are insufficient to establish a genuine issue of material fact. *See Anderson,* 477 U.S. at 248, 91 L.Ed.2d at 212. Judges are not " 'required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party.' " *Id.* at 251, 91 L.Ed.2d at 213 (quoting *Schuylkill & Dauphin Improvement & R.R. Co. v. Munson,* 81 U.S. (14 Wall.) 442, 448, 20 L.Ed. 867, 872 (1871)). On the other hand, a motion for summary judg-

ment should not be granted " 'unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances.' " *Campbell v. Hewitt, Coleman & Assocs., Inc.,* 21 F.3d 52, 55 (4th Cir.1994) (quoting *Phoenix Sav. & Loan, Inc. v. Aetna Casualty & Sur. Co.,* 381 F.2d 245, 249 (4th Cir.1967)).

### B. *Plaintiff's Rehabilitation Act Claim*

■■■ Plaintiff alleges that she was unlawfully discharged in violation of the Federal Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., because of absences she incurred due to migraine headaches, degenerative disc disease, abdominal pain, and Barrett's esophagus. Pursuant to the Rehabilitation Act, "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her ... disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity ... conducted by ... the United States Postal Service." 29 U.S.C. § 794(a). Thus, to be entitled to the protection of the Rehabilitation Act, Plaintiff must prove: (1) that she is an individual with a disability; (2) that she is otherwise qualified for the job in question; and (3) that she was discharged because of her disability. *See id.; see, e.g., Heilweil v. Mount Sinai Hosp.,* 32 F.3d 718, 722 (2d Cir.1994), *cert. denied,* 513 U.S. 1147, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995). Because this Court finds that Plaintiff has failed to establish the second element of her prima facie case, even if Plaintiff qualifies as an individual with a disability pursuant to the Act, Plaintiff's claim nonetheless must fall in that Plaintiff has not established that she is "otherwise qualified" for the position from which she was discharged.

■■■ To establish that she is "otherwise qualified," Plaintiff must show that "with or without reasonable accommodation, [she is able to] perform all of the essential functions of the position in question." 29

C.F.R. § 1613.702(f); *see also Little v. Federal Bureau of Investigation*, 1 F.3d 255, 257 (4th Cir.1993) (citing *School Bd. of Nassau County v. Arline*, 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 94 L.Ed.2d 307, 321 n. 17 (1987)), *reh'g denied*, 481 U.S. 1024, 107 S.Ct. 1913, 95 L.Ed.2d 519 (1987). Plaintiff must be able to meet "all of [her] program's requirements in spite of [her] handicap." *Southeastern Community College v. Davis*, 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979). In the context of this case, the dispositive issues are: (1) whether a reasonably regular level of attendance was an essential function of Plaintiff's job; and (2) whether Plaintiff could have maintained such a level of attendance with reasonable accommodation. The Court next addresses each of these issues in turn.

### 1. Reasonably Regular Attendance as an Essential Job Function

■ Defendants allege that Plaintiff was not otherwise qualified for her position in that she was unable to maintain a regular and predictable level of attendance. The Court finds this argument to be persuasive. "Few would dispute that, in general, employees cannot perform their jobs successfully without meeting some threshold of both attendance and regularity." *Walders v. Garrett*, 765 F.Supp. 303, 309 (E.D.Va.1991), *aff'd*, 956 F.2d 1163 (4th Cir.1992). The weight of authority "supports this commonsense conclusion." *Id.; see also Santiago v. Temple Univ.*, 739 F.Supp. 974, 979 (E.D.Pa.1990) ("An employee of any status, full or part time, cannot be qualified for his position if he is unable to attend the workplace to perform the required duties, because attendance is necessarily the fundamental prerequisite to job qualification."), *aff'd*, 928 F.2d 396 (3d Cir.1991); *Law v. United States Postal Serv.*, 852 F.2d 1278, 1279–80 (Fed.Cir. 1988) (explaining that "an agency is inherently entitled to require an employee to be present during scheduled work times and, unless the agency is notified in advance, an employee's absence is disruptive to the

agency's efficient operation"); *Wimbley v. Bolger*, 642 F.Supp. 481 (W.D.Tenn.1986) ("It is elemental that one who does not come to work cannot perform any of his job functions, essential or otherwise."), *aff'd*, 831 F.2d 298 (6th Cir.1987); [Tr. of Admin. Hr'g, p. 200 (noting that when Plaintiff was out, it was very disruptive to the office) ]. Moreover, in addressing this precise issue, the Fourth Circuit has held that "a regular and reliable level of attendance is a necessary element of most jobs." *Tyndall v. National Educ. Ctrs., Inc.*, 31 F.3d 209, 213 (4th Cir.1994). Specifically, the Fourth Circuit has instructed that "[e]xcept in the unusual case where an employee can effectively perform all work-related duties at home, an employee who does not come to work cannot perform any of his job functions, essential or otherwise." *Id.* Although this authority does not establish any specific attendance requirements for government jobs, it does establish that "some degree of regular, predictable attendance is fundamental . . . ." *Walders*, 765 F.Supp. at 312. The case at bar is no exception to this rule.

In this case, Plaintiff was a member of a three-person administrative work team that operated under strict deadlines. In fact, the nature of Plaintiff's job indicates that her presence was regularly required. Plaintiff's primary responsibility was to provide direct support to the PMSC Manager, which included, among other things, covering the telephones, active screening and direction of incoming calls and/or unscheduled visits from Vendors, making travel arrangements, and handling correspondence. According to Plaintiff's immediate supervisor, "it [was] essential that [PMSC] have direct access to someone with [the] skills [necessary for Plaintiff's job] throughout [its] daily operations" because a number of the activities that Plaintiff dealt with on a daily basis "could [not] wait." [Gov.Ex. C, Tr. of Admin. Hr'g, p. 213]. Because Plaintiff was the only secretary in the office, these responsibilities were not easily deferred. On those occa-

.sions when Plaintiff failed to show up, Defendants were required either to pull in an employee from a different department, thus leaving the other department inadequately covered and requiring other employees to work overtime, or to bring someone in from a temporary service, thus costing the agency additional money. *See id.* at 246–47. In circumstances such as those in this case, "substantial and unpredictable absenteeism" would undoubtedly preclude Plaintiff from performing her job duties at a satisfactory level. *Walders,* 765 F.Supp. at 310. Therefore, "although sick days are by their very nature unexpected, the amount of unexpected absences Plaintiff incurred affected the efficiency of the [PMSC]." *Id.* In addition, Plaintiff's absenteeism was generally random and Plaintiff frequently failed to take the actions necessary to minimize the disruption that occurred when she was absent. [Gov.Ex. C, Tr. of Admin. Hr'g, p. 217]. According to Thompson, Plaintiff's supervisor could not predict her absences or count on her attendance on any given day. Plaintiff's excessive and unpredictable absences reflect her inability to perform the essential functions of her job.

Plaintiff has even indirectly acknowledged the importance of attendance to her job. During her pre-employment interview for the Greensboro facility, when Thompson inquired about the impact that Plaintiff's medical conditions would have on Plaintiff's ability to be present, Plaintiff assured Thompson that, despite her medical history, attendance would not be a problem for her. In addition, Plaintiff was frequently reminded during the course of her employment of the importance of her attendance through various warning letters and meetings with her supervisors. Given these facts, it is unquestionable that attendance was a prerequisite to Plaintiff performing her necessary job functions. Because Plaintiff was unable to come to work on a regular basis, she was unable to satisfy any of the functions of the job in question, much less the essential ones. For the foregoing reasons, this Court finds that attendance was an essential function of Plaintiff's job and that Plaintiff, therefore, was not qualified to perform her job without accommodation as that term is defined by the Act. Given this conclusion, the Court next turns to whether Plaintiff would have been so qualified with reasonable accommodation.

### 2. Reasonable Accommodation

In considering the second issue, that is, whether the employer could make a reasonable accommodation that would allow Plaintiff to perform the essential functions of her job, the Court finds that Plaintiff could not have been reasonably accommodated for the following reasons. First, despite Plaintiff's contentions that Defendants should have given her a revised schedule to accommodate her need to take medical leave, various courts have held that allowing an employee to take frequent unscheduled absences or to come and go as she pleases is not a reasonable accommodation. *See, e.g., Walders,* 765 F.Supp. at 313 (explaining that when "the accommodation plaintiff seeks is simply to be allowed to work only when her illness permits," the law does not require such an accommodation); *Rhoads v. Federal Deposit Ins. Corp.,* 956 F.Supp. 1239, 1248–49 (D.Md.1997) (holding that a plaintiff's requested accommodation to allow her to take sick leave when her disability prevented her from working was "in substance a request not to perform her job, and hence, facially unreasonable"); *Wimbley v. Bolger,* 642 F.Supp. 481, 485 (W.D.Tenn.1986), aff'd, 831 F.2d 298 (6th Cir.1987) (explaining that the USPS is not required to "simply allow [a] plaintiff to come and go as he" pleases). Indeed, a Federal Agency is not required to provide an accommodation that would "impose an undue hardship" on the agency's operation. 29 C.F.R. § 1613.704(a). Because Plaintiff's role has been described as "the hub of activity" for the PMSC, allowing Plaintiff to be absent during regular business hours, regardless of whether Plaintiff later

made up the hours, would cause an undue hardship to USPS, which operates under strict time deadlines. Like the plaintiffs in *Rhoads* and *Wimbley*, Plaintiff is asking USPS to allow her to "come and go as she pleases." The law does not require employers to make these types of accommodations. Moreover, when Plaintiff's request for a revised schedule is considered in light of the fact that she is allowed to work past hours only with supervision, the unreasonableness of her request is compounded in that not only would USPS have to adjust to Plaintiff's desired schedule, but Plaintiff's supervisor would likewise have to alter her own schedule to accommodate Plaintiff.[8] Because the accommodation requested by Plaintiff is facially unreasonable, Plaintiff has failed to establish that she was "otherwise qualified" for her job.

▆ Moreover, this Court finds that the accommodation sought by Plaintiff would not have corrected her absenteeism problems. By Plaintiff's own acknowledgment, because many of her medically-related absences were for almost full days or more, [Gov.Ex. C, Tr. of Admin. Hr'g, pp. 83, 94, 96–97, 104, 108], a revised schedule, which simply would have allowed her to alter her working hours during any given day, would not have benefitted her on those days where she could not work at all. [Gov.Ex. A, Thompson Aff. B, Leave Analysis, Att. 10; Gov.Ex. C, Tr. of Admin. Hr'g, p. 94]. Furthermore, an employer is only required by the Act to accommodate a plaintiff's disability and not a plaintiff's non-disability-related absences. In this case, a substantial number of Plaintiff's absences was due to factors other than the medical conditions about which she complains. [Gov.Ex. C, Tr. of Admin. Hr'g, pp. 107–08, 257, 264 (noting that there was no common cause for Plaintiff's absences and that many of Plaintiff's absences were not

for illnesses) ]; [Gov.Ex. A, Thompson Aff. B, Leave Analysis, Att. 10]. Therefore, allowing Plaintiff a revised schedule solely for those absences related to her alleged disabilities would have afforded her no benefit in most cases because of her numerous absences unrelated to her alleged disability. This fact coupled with the fact that the absences related to Plaintiff's alleged disabilities were for full days or more evidences the lack of utility of the revised schedule in Plaintiff's case. For the foregoing reasons, the Court finds that allowing Plaintiff a revised schedule would not have cured her absenteeism problems. Therefore, the Court also finds that Plaintiff was not otherwise qualified to perform her job, even with reasonable accommodation, because, in light of the facts, the accommodation she requests is to be allowed excessive absenteeism. For the foregoing reasons, Defendants' Motion for Summary Judgment as to Plaintiff's Rehabilitation Act claim is GRANTED. Because the Court has found that Plaintiff was not otherwise qualified for her job, the Court need not address whether Plaintiff has established the other elements of her prima facie case for disability discrimination under the Rehabilitation Act.

## C. *ADEA Discrimination*

▆ In order to establish a cause of action under the ADEA, Plaintiff must demonstrate that Plaintiff would not have been discharged had the employer not considered her age. *See Equal Employment Opportunity Comm'n v. Clay Printing Co.*, 955 F.2d 936, 940 (4th Cir.1992). Plaintiff can establish that her age was a factor in one of two ways. *See id.* Either she may present direct evidence of discrimination under the traditional or mixed-motive approach, *see id.; Henson v. Liggett Group, Inc.*, 61 F.3d 270, 274 (4th Cir.1995), or,

---

8. Plaintiff alleges that despite the Fair Labor Standards Act ("FLSA") requirement that Plaintiff work with supervision only, she was not required to work under supervision when the FLSA requirement proved inconvenient for Defendants. [Pl.'s Br. in Opp'n to Defs.'

Mot. for Summ.J., at 5]. Plaintiff seems to suggest that because Defendants have violated FLSA in the past, Defendants should continue to commit such violations in the future. This Court does not find Plaintiff's argument to be persuasive.

Plaintiff may establish a prima facie case under the *McDonnell Douglas* proof scheme. *Clay,* 955 F.2d at 941. Because Plaintiff has failed to present direct evidence of discrimination, this Court will assess her claim under *McDonnell Douglas.*[9] Under the *McDonnell Douglas* framework, Plaintiff must show that: (1) she was a member of a protected class; (2) she was discharged; (3) *at the time of her discharge, she was performing at a satisfactory level, meeting her employer's legitimate expectations;* and (4) after her discharge, she was replaced by someone outside of the protected class. *See id.* (citing *EEOC v. Western Electric Co., Inc.,* 713 F.2d 1011, 1014 (4th Cir.1983)) (italics added); *Lovelace v. Sherwin–Williams Co.,* 681 F.2d 230, 239–41 (4th Cir.1982).

Once the plaintiff establishes a prima facie case of age discrimination, the burden then shifts to the defendants " ' "to articulate some legitimate, nondiscriminatory reason" ' " for terminating the plaintiff's employment. *Clay,* 955 F.2d at 941 (quoting *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981) (quoting *McDonnell Douglas,* 411 U.S. at 802–04, 93 S.Ct. at 1824–25)). The defendants are "not required to prove absence of a discriminatory motive, but merely [to] articulate some legitimate reason for [the adverse employment] action." *Western Electric Co.,* 713 F.2d at 1014 (citing *Smith v. University of North Carolina,* 632 F.2d 316, 332–33 (4th Cir.1980)). Moreover, the defendants' burden is one of production and not one of persuasion.

If Defendants are successful in carrying out their burden, Plaintiff must demonstrate by a preponderance of the evidence that the legitimate reasons articulated by Defendants were pretext for discrimination. *Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093–94. On the pretext issue, it is Plaintiff's responsibility to establish that

Defendants' decision to terminate her was age-related or "unworthy of credence." *Id.* at 256, 101 S.Ct. at 1095. Given this standard, the Court next turns to whether Plaintiff was able to establish a prima facie case of age discrimination.

As is required by the Rehabilitation Act, a plaintiff alleging age discrimination pursuant to the ADEA must show, as part of her prima facie case, that she was meeting the legitimate performance expectations of her employer. Plaintiff alleges, despite the frequency of her absences, that she met this prong of her prima facie case. According to Plaintiff, Defendants' allegation that regular attendance is expected of all employees is pretext for discrimination, in that all employees were not regularly required to attend. More specifically, Plaintiff alleges that her coworkers Myra Lynn and Karen Kim, both under the age of forty, had multiple absences, extended lunch hours, and frequently revised their schedules, but were not terminated. [Pl.'s Br. in Opp'n to Defs.' Mot. for Summ.J., at 7]. However, Plaintiff bears the burden of proof in this case, and Plaintiff has failed to provide any evidence supporting such allegations. The Fourth Circuit has consistently held that general allegations of discriminatory practice without descriptions of specific incidents are not sufficient evidence from which a jury could reasonably conclude that a plaintiff has established a prima facie case of discrimination. *See Taylor v. Virginia Union Univ.,* 193 F.3d 219, 234 (4th Cir.1999) (holding that a Corporal's testimony on the plaintiff's behalf that unidentified male police officers were not treated similarly for engaging in the same general behavior as that for which the plaintiff was punished was not sufficiently specific evidence from which a jury could reasonably conclude that the plaintiff had established a prima facie case of discrimination), *cert. denied,*

---

9. Plaintiff expressly acknowledges that no one in PMSC ever said anything that would lead Plaintiff to believe that her age was a factor in her termination. In fact, Plaintiff admits that

Defendants continuously told her that the adverse actions taken were taken because of her attendance and her performance. [Gov.Ex. C, Tr. of Admin. Hr'g, p. 132].

528 U.S. 1189, 120 S.Ct. 1243, 146 L.Ed.2d 101 (2000); *Simpson v. Welch*, 900 F.2d 33, 35 (4th Cir.1990) (explaining that general allegations without descriptions of specific incidents are insufficient to establish a claim of discrimination). Thus, Plaintiff's mere unsupported beliefs of disparate and discriminatory treatment are irrelevant given the standard established by the Fourth Circuit as to what a Plaintiff must present to withstand summary judgment. *See, e.g., Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456–57 (4th Cir.1989); *McKiver v. General Electric Co.*, 11 F.Supp.2d 755, 758–59 (M.D.N.C.1997) (explaining that the plaintiff failed to make out her prima facie case of discrimination where she presented no evidence that the defendant "hired or retained [other] applicants who failed to comply with company policy and procedures"). Moreover, Defendants have presented evidence to the contrary of what Plaintiff alleges, showing that neither Myra Lynn nor Karen Kim received special treatment, and that neither had accumulated as many absences as Plaintiff. [Gov.Ex. A, Thompson Aff. B ¶ Q4e]; *see, e.g., Houck v. Virginia Polytechnic Institute*, 10 F.3d 204 (4th Cir.1993) (instructing that where Plaintiff fails to establish a disparity, a plaintiff has failed to adequately allege discrimination); *Cook v. CSX Transportation Corp.*, 988 F.2d 507, 512 (4th Cir.1993); *Afande v. National Lutheran Home for the Aged*, 868 F.Supp. 795, 802 (D.Md.1994). Defendants have also presented various sections of the USPS Employment and Labor Relations Manual that expressly provide that regular and reliable attendance is expected and required of all employees. Moreover, this Court has already engaged in a detailed discussion about the inadequacy of Plaintiff's performance and the necessity of Plaintiff's presence in light of Plaintiff's job responsibilities and the importance of her responsibilities to the daily functioning of the PMSC. Thus, for the same reasons articulated above and for the reasons articulated in the Court's analysis of Plaintiff's disability discrimination claim, this Court holds that Plaintiff has failed to establish that she met her employer's legitimate performance expectations, and is, thus,@ not able to establish all elements of her prima facie case of age discrimination. Accordingly, Defendants' Motion for Summary Judgment as to Plaintiff's claim of discrimination under the ADEA is GRANTED.

### D. *Intentional or Negligent Infliction of Emotional Distress*

Plaintiff alleges that Defendants' conduct with respect to Plaintiff's medical condition, by and through its managers, was at least negligent in that Defendants "harass[ed] her about her need to see a doctor and her need for absences associated with the medical conditions and [then subsequently terminated] her employment". Plaintiff asserts that this alleged conduct was severely distressing, and, thus, gives rise to either an intentional or negligent infliction of emotional distress claim. [Pl.'s Br. in Opp'n to Defs.' Mot. for Summ.J., at 8]. However, even assuming that Defendants' conduct was at least negligent and harmful to Plaintiff, Defendants, nonetheless, contend that Plaintiff's claims are not properly before this Court. According to Defendants, the Rehabilitation Act provides the exclusive remedy for Plaintiff's tort claims. Moreover, Defendants allege that any tort claims that Plaintiff had against the government should have been brought pursuant to the Federal Tort Claims Act ("FTCA"), and that Plaintiff failed to comply with the administrative requirements of the FTCA. Each of Defendants' contentions is addressed below.

#### 1. The Rehabilitation Act as Plaintiff's Exclusive Remedy

The role of Title VII with respect to claims brought for intentional and negligent infliction of emotional distress is instructive as to Defendants' claim that the Rehabilitation provides the exclusive remedy for Plaintiff's tort claims. More specifically, in 1991, the Rehabilitation Act was amended to provide that the same stan-

dards and remedies available under Title VII should be used in applying the Rehabilitation Act. *See* 29 U.S.C. § 794a. Because Title VII provides a remedy for those employees, including federal employees, who face employment discrimination on the basis of sex, race, religion, or national origin, *see* 42 U.S.C. § 2000e–2; 42 U.S.C. § 2000e–16, the Supreme Court has held expressly that Title VII creates the exclusive remedy for federal employees alleging employment discrimination. *Brown v. General Services Admin.*, 425 U.S. 820, 835, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). Given the Supreme Court's holding, various courts have dismissed state law claims of discrimination brought by postal employees on the grounds that Title VII provides the exclusive remedy for such claims. *See, e.g., Callanan v. Runyun*, 903 F.Supp. 1285, 1295 (D.Minn.1994), *aff'd*, 75 F.3d 1293 (8th Cir.1996); *Schroder v. Runyon*, 1 F.Supp.2d 1272, 1279 (D.Kan.1998), *aff'd*, 161 F.3d 18 (10th Cir.1998). Likewise, because the remedies and procedures of the Rehabilitation Act are governed by Title VII, various courts have also concluded that the exclusive remedy rule applied to tort claims in Title VII cases applies with equal force to disability discrimination claims brought by federal employees pursuant to the Rehabilitation Act. *See, e.g., DiPompo v. West Point Military Academy*, 708 F.Supp. 540, 544 (S.D.N.Y.1989); *Kienlen v. Merit Systems Protection Bd.*, 687 F.Supp. 461, 462–63 (D.Minn.1988); *DesRoches v. United States Postal Service*, 631 F.Supp. 1375, 1379 (D.N.H.1986). This Court finds the reasoning of those courts applying the exclusive remedy rule to be persuasive and has adopted the reasoning of those courts. According to such courts, state law claims asserted by federal employees based on the same factual predicate as a disability discrimination claim are covered by the Rehabilitation Act, which is the exclusive remedy for disability discrimination claims.[10] Thus, to the extent that Plaintiff has asserted a claim for intentional or negligent infliction of emotional distress, both of which are tort claims tied to Plaintiff's claim for disability discrimination, this Court will allow Defendants' Motion for Summary Judgment. However, this determination does not end the Court's inquiry of Plaintiff's tort claims.

■ In Plaintiff's Complaint, she seems to identify, among other things, some form of harassment because of her medical conditions as the basis for her allegations of intentional or negligent infliction of emotional distress. While the basis of Plaintiff's claim for intentional or negligent infliction of emotional distress is not exactly clear, to the extent that Plaintiff bases her intentional or negligent infliction of emotional distress claim on harassment because of her medical conditions, Plaintiff has asserted a claim that falls outside of the Rehabilitation Act's coverage. Nonetheless, Plaintiff's claims for emotional distress based upon allegations of harassment must fail because such claims constitute tort claims against the federal government and must accordingly comply with the procedural rules of the Federal Tort Claims Act ("FTCA"). In this case, Plaintiff has failed to properly assert either a claim for intentional or negligent infliction of emotional distress on any basis in accordance with the FTCA's requirements, as set out in the discussion that follows.

2. Failure to Follow the Procedural Requirements of the Federal Tort Claims Act

■ Although the general rule with respect to claims brought against the federal government is "that the United States cannot be sued at all without the consent of

---

**10.** The Rehabilitation Act is not the exclusive method of recovery for private entities such as federal contractors and thus does not preempt similar or related state law claims for such entities. *See Martin Marietta Corp. v. Maryland Comm'n on Human Relations*, 38 F.3d 1392, 1403 (4th Cir.1994). Despite this fact, USPS employees are federal employees whose methods of recovery for employment discrimination claims are limited to those claims brought under Title VII and the Rehabilitation Act.

Congress," *Block v. North Dakota ex. rel. Board of University & School Lands,* 461 U.S. 273, 287, 103 S.Ct. 1811, 75 L.Ed.2d 840, 853 (1983), pursuant to the Postal Reorganization Act of 1970 ("PRA"), 39 U.S.C. § 401, Congress, by consenting to suits against the Postal Service, has authorized the Postal Service to "sue and be sued in its official name." Pursuant to the PRA, the Federal Tort Claims Act "shall apply to tort claims arising out of activities of the Postal Service." 39 U.S.C. § 409(c). Given the language of the PRA, the Federal Tort Claims Act governs Plaintiff's assertion of tort claims. Because Plaintiff is asserting state tort law claims, the FTCA governs those claims, and Plaintiff is required to bring such claims against the USPS in the manner proscribed by the FTCA.

■ Specifically, the FTCA requires an administrative claim to be filed with the responsible federal agency prior to filing a lawsuit against the United States under the FTCA. *See* 28 U.S.C. § 2675(a); *McNeil v. United States,* 508 U.S. 106, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993); *Plyler v. United States,* 900 F.2d 41, 42 (4th Cir. 1990). However, Plaintiff did not file an administrative claim with the Postal Service as required by the FTCA. In fact, Plaintiff did not submit any evidence or even allege that she had in fact filed a tort claim with the USPS. Plaintiff instead alleges, without substantiating her claim, that she was not required to follow the FTCA's administrative requirements. Contrary to Plaintiff's contentions, failure to file an administrative claim mandates dismissal for lack of subject matter jurisdiction. *See Plyler,* 900 F.2d at 42; *Henderson v. United States,* 785 F.2d 121, 123–24 (4th Cir.1986). For the foregoing reasons, Defendants' Motion for Summary Judgment as to Plaintiff's claims of intentional or negligent infliction of emotional distress on the bases of disability discrimination or harassment because of her medical conditions is GRANTED.

### E. *Punitive Damages*

■ To the extent that Plaintiff's Complaint states a claim for punitive damages against Defendants, Defendants assert that Plaintiff's claim must be dismissed. According to Defendants, because punitive damages are not recoverable from governmental entities or government officials in Title VII cases, *see, e.g., Bryant v. Locklear,* 947 F.Supp. 915, 916 (E.D.N.C.1996); *Cleveland v. Runyon,* 972 F.Supp. 1326 (D.Nev.1997); *Garrett v. Clarke County Bd. of Educ.,* 857 F.Supp. 949 (S.D.Ala. 1994), they are likewise unavailable in cases brought under the Rehabilitation Act. This Court agrees that such damages are not available in this case. *See, e.g., Tuers v. Runyon,* 950 F.Supp. 284 (E.D.Cal.1996) (holding that punitive damages are not available against governmental entities in Rehabilitation Act cases). In fact, Plaintiff even acknowledges that punitive damages have been disallowed against governmental entities, based on the "amendments created by the Civil Rights Act of 1991." [Pl.'s Br. in Opp'n to Defs.' Mot. for Summ.J., at 12]. As in Title VII cases, the damages remedy for violations of the Rehabilitation Act is now set forth in 42 U.S.C. §§ 1981a(a)(2) & (b)(1).

■ Pursuant to 42 U.S.C. § 1981a(b)(1):

> A complaining party may recover punitive damages … against a respondent (other than a government, government agency or political subdivision) [11] if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice and reckless indifference to the federally protected rights of an aggrieved individual.

42 U.S.C. § 1981a(b)(1) (1994). Because the United States Postal Service is a governmental entity, and Henderson is a government official being sued in his official capacity, even if this Court had found that

---

11. Section 2000e–16 expressly provides that the United States Postal Service is among those governmental departments and agencies covered.

Defendants had engaged in discriminatory or malicious conduct, Plaintiff's claim for punitive damages would have, nonetheless, failed in that punitive damages are not allowed against governmental agencies or government officials being sued in their official capacities. *See, e.g., Bryant*, 947 F.Supp. at 916 (explaining that section 1981a(b)(1) bars suits against the government and individual defendants acting in their official capacities as federal employees); *Joyner v. Fillion*, 17 F.Supp.2d 519, 529 (E.D.Va.1998) (explaining that the Civil Rights Act of 1991 exempts a government, government agency, or political subdivision from punitive damages) (quotations omitted); *see also Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) (explaining that a lawsuit against a government official in his official capacity "generally represent[s] only another way of pleading an action against an entity of which the officer is an agent"). Because the Court has found that Plaintiff has not sufficiently alleged any discrimination on the part of Defendants and because punitive damages are not recoverable from federal agencies in Rehabilitation Act cases, this Court grants Defendants' Motion for Summary, Judgment as to Plaintiff's claim for punitive damages.

III. *CONCLUSION*

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED as to Plaintiff's claims for disability discrimination in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 700, age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, negligent or intentional infliction of emotional distress, and punitive damages.

An Order and Judgment consistent with this MEMORANDUM OPINION will be filed contemporaneously herewith.