Willie M. BOND, Plaintiff,

v.

John E. POTTER, Postmaster General,
United States Postal Service,
Defendant.

No. CIV. 1:03CV01120.

United States District Court,
M.D. North Carolina.

Nov. 30, 2004.

Humphrey S. Cummings, The Cummings Law Firm, P.A., Charlotte, NC, for Plaintiff.

Joan Brodish Binkley, Office of U.S. Attorney, Greensboro, NC, for Defendant.

## MEMORANDUM OPINION

BULLOCK, District Judge.

Plaintiff Willie M. Bond ("Bond") filed this employment discrimination action on November 4, 2003, alleging race discrimination by his employer, the United States Postal Service ("USPS" or "Defendant") in violation of the Civil Rights Acts of 1866, 1964, and 1991. Bond, a black man, claims the USPS discriminated against him when it denied him overtime pay received by his white peers and when it disciplined him more severely than a white employee who committed similar infractions. Bond seeks actual and compensatory damages related to his discrimination claims and for the related claim of intentional infliction of emotional distress. Before the court is Defendant's motion to dismiss pursuant to Rule 12(b)(6) or alternatively for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure. For the reasons set forth below, Defendant's motion will be granted as to Bond's overtime pay claim and denied as to Bond's demotion claim.

## FACTS

Bond has worked for the USPS since 1969 and has been stationed at the Chapel Hill, North Carolina, Post Office since 1993, where, until his demotion, he served as a relief supervisor managing letter carrier operations. All of the regular supervisors at the Chapel Hill Post Office were black. After Bond was demoted, the USPS assigned two white supervisors from other area post offices to cover his shifts. Bond claims that the white replacement supervisors were given overtime pay that he had been denied, and that one of the white supervisors was punished less severely for infractions similar to those for which Bond was demoted.

■ Bond first claims that he was discriminated against when he was denied payment for penalty overtime, or T-time, that he worked between June and November, 2002. Penalty overtime is a rate of pay twice the normal rate that accrues once a postal employee has worked more than ten hours in a single shift or has worked overtime on more than five consecutive days. Bond raised his T-time complaint with an Equal Employment Opportunity counselor on December 11, 2002, and filed formal discrimination charges with the Equal Employment Opportunity Commission ("EEOC") on March 27, 2003. An EEOC investigation showed that he worked, and was paid for, a total of 41.94 hours of T-time in August and September, 2002, and his claims of race discrimination were denied. Bond contends, however, that his manager threatened him with disciplinary action if he recorded T-time and that the USPS time records used in the EEOC proceeding do not, therefore, accurately reflect his T-time hours worked. Bond instead kept a personal record of his T-time and submitted an affidavit in which he claims to have worked unpaid T-time on thirty-two different occasions, the last of which occurred on October 26, 2002.[1]

Bond's second claim of race discrimination arises out of his failure to properly manage the letter carriers under his supervision. As a supervisor, Bond was responsible for letter carrier operations, including the scheduling of carrier routes. Bond's manager directed him and the other supervisors to schedule carrier routes to avoid incurring penalty overtime. On October 10, 2002, one of Bond's letter carriers worked more than eleven hours and had, therefore, earned penalty overtime pay. Bond and another supervisor solicited the carrier's compliance in a scheme to enter false "clock rings," or time records, in an effort to conceal from Bond's manager his failure to avoid penalty overtime charges. Bond entered false clock rings on October 10, 2002, showing that the carrier worked only ten hours. Bond then entered false clock rings on October 11, 2002, showing that the carrier worked ten hours when she actually worked only eight. Bond's manager discovered this fraud and, on December 19, 2002, recommended that he be dismissed from the Postal Service.

Bond contested his dismissal and, on February 3, 2003, the USPS reduced his penalty to a demotion. On February 10, 2003, Bond challenged his demotion with the Merit Systems Protection Board ("MSPB"), claiming the punishment was unduly severe because he entered the false

---

1. Bond later asserted, in a memorandum filed in response to Defendant's reply brief that he worked T-time for which he was not paid on November 3, 2002. Bond offered no evidence that he did so except an e-mail message to his attorney stating that he worked overtime on that day. Even treating this e-mail message as a second affidavit, Bond cannot create a genuine issue of fact by contradicting his own previously sworn evidence. *See Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 198 (4th Cir.1997).

time records at his superior's direction and that his demotion was the product of race discrimination. After an investigation and hearing, the administrative judge found that while Bond's manager did establish a strong policy against the use of penalty overtime, such pay was still regularly granted when properly incurred. The administrative judge concluded that Bond did not falsify the time records pursuant to any order from his manager, but did so to avoid disciplinary action for his failure to properly manage carriers' schedules. The administrative judge found no evidence to support Bond's claims of race discrimination related to his demotion, finding that Bond failed to establish a *prima facie* case of race discrimination and that Defendant had legitimate, non-discriminatory reasons for demoting him. Bond filed a petition for further administrative review with the EEOC on August 4, 2003, and that appeal was denied.

## DISCUSSION

■ Because Bond has had only a limited opportunity for discovery, the court will treat Defendant's motion only as one pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure. Bond seeks damages under Title VII of the Civil Rights Act of 1964. Title VII makes unlawful any employment practice that "discriminate[s] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e–2(a). Title VII further states that "all personnel actions affecting employees ... in the United States Postal Service ... shall be made free from any discrimination based on race." 42 U.S.C. § 2000e–16.[2]

■ Bond's T-time claims must be dismissed for failure to exhaust administrative remedies.[3] "A federal employee is required to timely exhaust his administrative remedies by initiating contact with an EEO counselor within forty-five days of the date of the matter alleged to be discriminatory." *Chattopadhyay v. Thompson,* 55 Fed.Appx. 643, 644, 2003 U.S.App. LEXIS 2063, *2 (4th Cir.2003) (citing 29 C.F.R. 1614.105(a)(1)). Bond's personal time record shows that he worked unpaid T-time on thirty-two different occasions, the last of which occurred on October 26, 2002, forty-six days prior to his December 11, 2002, meeting with an EEO counselor.[4] Thus, all of the allegedly discriminatory acts Bond complains of fall outside the limitations period and are not actionable.[5]

2. Bond also asserts his claims of race discrimination under the Civil Rights Act of 1866, 42 U.S.C. § 1981. Because Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment," Bond's Section 1981 claims fail to state a claim upon which relief may be granted. *Brown v. Gen. Servs. Admin.,* 425 U.S. 820, 835, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976).

3. A limitations defense may be raised in a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See Williams v. Enter. Leasing Co.,* 911 F.Supp. 988, 992 (E.D.Va.1995); 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1360 (1990).

4. At the time it filed its motion to dismiss (or alternatively for summary judgment) Defendant attached records of the EEOC showing Bond sought pre-complaint counseling on December 11, 2002. In response Bond filed an affidavit indicating that he worked T-time hours between June 10, 2002, and October 26, 2002.

5. Bond argues that all thirty-two instances of unpaid T-time are actionable under a continuing violation theory. Bond's argument fails for two reasons: First, Bond's EEO action must be timely as to at least one present discriminatory act before other, untimely acts may be considered under a continuing violation theory. *See AMTRAK v. Morgan,* 536 U.S. 101, 112, 122 S.Ct. 2061, 153 L.Ed.2d

*See AMTRAK v. Morgan,* 536 U.S. 101, 108, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).

 The 45–day limitations period is not jurisdictional and "is subject to equitable doctrines such as tolling or estoppel." *Id.* at 113, 122 S.Ct. 2061 (citing *Zipes v. Trans. World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982)). Such doctrines, however, are rarely applied. Indeed, while the Fourth Circuit has adopted a "flexible rule which requires a case-by-case examination [of the facts] to determine if an equitable tolling of the filing period is appropriate," *Harvey v. New Bern Police Dep't,* 813 F.2d 652, 654 (4th Cir.1987), the remedy of equitable tolling has been "generally reserved . . . for circumstances which were truly beyond the control of the plaintiff." *Hill v. John Chezik Imports,* 869 F.2d 1122, 1124 (8th Cir.1989) (citing *Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 148 n. 1, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984)). No such circumstances exist here. It is undisputed that Bond had knowledge of the forty-five day limitations period and that he was aware that he was not being paid for the T-time he claims to have worked. There is no evidence to suggest that circumstances beyond Bond's control prevented him from pursuing his administrative remedies in a timely manner.

Bond's Title VII claim related to his demotion presents a closer question. In his complaint, Bond alleges disparate discipline based on his race when he was demoted. "Under Title VII, the plaintiff bears the initial burden of proving a prima facie case of discrimination by raising an inference that the defendant acted with discriminatory intent." *Karpel v. Inova Health Sys. Servs.,* 134 F.3d 1222, 1227 (4th Cir.1998).

To establish a *prima facie* case of racial discrimination in the enforcement of employee disciplinary measures under Title VII, [Bond] must show (1) that he is a member of the class protected by Title VII, (2) that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class, and (3) that the disciplinary measures enforced against him were more severe than those enforced against those other employees.

*Cook v. CSX Transp. Corp.,* 988 F.2d 507, 511 (4th Cir.1993).

 If Bond succeeds in establishing a *prima facie* case of discrimination, the burden shifts to the USPS to "rebut the presumption of discrimination by producing evidence that the plaintiff was [demoted] . . . for a legitimate, nondiscriminatory reason." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). "To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's [demotion]." *Id.* at 255, 101 S.Ct. 1089. If Defendant rebuts a presumption of discrimination, Bond bears the burden of proving intentional discrimination. *Halperin v. Abacus Tech. Corp.,* 128 F.3d 191, 196 (4th Cir.1997) (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502,

---

106 (2002) (citing *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977)). Bond presents no evidence of a present discriminatory act, as all of his unpaid T-time, if it occurred, occurred outside the limitations period. Second, even if Bond could show a timely act of discrimina-

tion, any such acts that occurred outside the forty-five day period could not be sued upon. Each denial of T-time pay is a discrete act, and "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113, 122 S.Ct. 2061.

506–11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

■ It is undisputed that Bond, a black man, is a member of a protected class, and that he was demoted. However, for his demotion claim to survive Bond must show that another supervisor, not a member of Bond's protected class, was treated differently under circumstances similar to those leading to Bond's demotion. Bond offers the affidavit of the local president of the National Association of Postal Supervisors, himself a former postal manager, stating that Dean Fields, a white supervisor, engaged in similar conduct to Bond and was not demoted. Whether or not this individual was similarly situated as Bond and whether Defendant can articulate legitimate, non-discriminatory reasons for any different treatment of Bond are not now before the court and must await development of a more complete record. This is a *de novo* proceeding, *Chandler v. Roudebush,* 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976), and discovery has not occurred. The court will, therefore, deny Defendant's motion as to Bond's disparate demotion claim.

■ Bond also asserts a state common law claim for intentional infliction of emotional distress. Title VII is, however, the "exclusive, preemptive administrative and judicial scheme for the redress of federal employment discrimination." *Pueschel v. United States,* 369 F.3d 345, 353 (4th Cir.2004). As such, Title VII precludes Bond's state law claims if they are "based on the same factual predicate" as his discrimination claims. *Gibson v. Henderson,* 129 F.Supp.2d 890, 903 (M.D.N.C.2001). *See also Mangum v. Postmaster Gen. United States Postal Serv.,* 2003 WL 22741191, 2003 U.S. Dist. LEXIS 20873 (M.D.N.C.2003). Bond bases his intentional infliction of emotional distress claim on precisely the same facts as his discrimination claims, and such claim is, therefore, precluded by Title VII.

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss Bond's overtime pay claim pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, will be granted. Bond's claim pursuant to 42 U.S.C. § 1981 and his common law claim for intentional infliction of emotional distress will also be dismissed. Defendant's motion to dismiss or alternatively for summary judgment on Bond's demotion claim will be denied. The court will direct that this case be scheduled for a Rule 26(f), Federal Rule of Civil Procedure, conference before a magistrate judge at the earliest practicable time.

An order in accordance with this memorandum opinion shall be entered contemporaneously herewith.

## *ORDER*

For the reasons set forth in the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED that Defendant's motion to dismiss Plaintiff's overtime pay claim [Doc. # 6] is **GRANTED**, and this claim is hereby **DISMISSED**. IT IS FURTHER ORDERED that Plaintiff's claim pursuant to 42 U.S.C. § 1981 and Plaintiff's common law claim for intentional infliction of emotional distress are also **DISMISSED**. IT IS FURTHER ORDERED that Defendant's motion to dismiss or alternatively for summary judgment [Doc. # 6] on Plaintiff's demotion claim is **DENIED**.

All other motions are **DISMISSED** as moot.